25CA0904 Erickson v Dep't of Human Services 07-02-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0904
City and County of Denver District Court No. 23CV33680
Honorable Michael W.V. Angel, Judge

---

Erika Erickson,

Plaintiff-Appellant,

v.

Colorado Department of Human Services,

Defendant-Appellee.

---

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE LIPINSKY
Yun and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 2, 2026

---

Byram Law, P.C., Elle J. Byram, Broomfield, Colorado, for Plaintiff-Appellant

Philip J. Weiser, Attorney General, Kendra Yates, Assistant Attorney General II, Jennifer L. Carty, Senior Assistant Attorney General, Denver, Colorado, for Defendant-Appellee

¶ 1     Erika Erickson appeals the district court's affirmance of the administrative law judge's (ALJ) entry of summary judgment against her in Erickson's administrative appeal of the findings of the Boulder County Department of Housing and Human Services (the County) that she abused or neglected her minor children. We affirm.

## I.     Background

### A.     The Dependency and Neglect Proceeding

¶ 2     In July 2022, the County filed a petition in dependency and neglect (the petition) against Erickson, alleging, among other facts, that her minor children were "mistreat[ed] or abused" and "lack[ed] proper parental care." In paragraph 4(c) of the petition, the County specifically alleged that the children were dependent and neglected because their "environment [was] injurious to their welfare." And in amended paragraph 10(a) of the petition, the County specifically alleged that the "family [was] in need of support[]." (We refer to paragraph 4(c) and amended paragraph 10(a) jointly as the "limited admissions.")

¶ 3     On January 17, 2023, the County and Erickson entered into a stipulated continued adjudication (the deferred adjudication) under

1

section 19-3-505(5), C.R.S. 2025. The court then entered a stipulated continued adjudication order, in which, among other provisions, it found that Erickson "voluntarily and knowingly" made the limited admissions by entering into the deferred adjudication.

¶ 4 In June 2023, after Erickson successfully completed the terms of the deferred adjudication, the court dismissed the petition and concluded the dependency and neglect proceeding.

### B. The Criminal Child Abuse Case

¶ 5 In August 2022, Erickson was charged with criminal child abuse under section 18-6-401(7), C.R.S. 2025, based on injuries that her child G.E. sustained. The summons and complaint (the complaint) served on Erickson in the criminal case cited her knowingly unreasonable placement of G.E. "in a situation which posed a threat of injury to [the] child's life or health and resulted in an . . . injury" to him. Erickson subsequently agreed to a twelve-month deferred judgment under which she pleaded guilty to child abuse.

¶ 6 Erickson satisfied the terms of the deferred judgment. As a consequence, her guilty plea was withdrawn, and her criminal case was dismissed.

## C. Erickson Is Added to the Trails Database

¶ 7 The Colorado Department of Human Services (the State Department) maintains a statewide child abuse and neglect registry called "Trails." *Romero v. Colo. Dep't of Hum. Servs.*, 2018 COA 2, ¶ 32, 417 P.3d 914, 921. The County notified Erickson in a letter dated August 8, 2022 (the notice letter), that she had been identified as the person responsible for five incidents of child abuse or neglect — four "Environment Injurious" incidents and one "Physical" incident. In the notice letter, the County said that Erickson's "name w[ould] be maintained" in Trails "as a person responsible" for the five incidents of child abuse or neglect. The County explained in the notice letter that "agencies provided by law when making decisions regarding child protection referrals and assessments" may access Trails and that "certain employers and agencies are required, or allowed, by law to request a check of Trails when screening individuals for positions that involve the care, treatment, or supervision of children." In addition, the County advised Erickson of her right to appeal her inclusion in Trails.

## D. Erickson's Initial Appeals

¶ 8 Erickson appealed her inclusion in Trails. Her appeal was referred to the Office of Administrative Courts. The State Department — the adverse party in Erickson's appeal — filed a notice of issues that recited the factual basis for the County's determination that Erickson was "a person responsible for an incident of child abuse or neglect."

¶ 9 After Erickson responded to the notice of issues, the State Department filed a summary judgment motion (the motion) supported by four exhibits — (1) the notice letter; (2) certified court records, including the complaint and the police incident report in her criminal case; (3) a certified copy of the deferred judgment; and (4) a certified copy of the deferred adjudication.

¶ 10 In the motion, the State Department argued there was no genuine issue of material fact in this case because the deferred adjudication and the deferred judgment "ar[ose] out of the same factual basis as the founded finding" in Trails. The State Department said that, under Department of Human Services Rule 7.111(H), 12 Code Colo. Regs. 2509-2 (the Rule), the deferred adjudication and the deferred judgment constituted Erickson's

4

admission to "the factual basis of the finding of responsibility for child abuse or neglect" and were therefore "conclusive evidence of [Erickson's] responsibility for child abuse or neglect to support a motion for summary judgment."

¶ 11    The Rule says, in its entirety,

> The following circumstances shall be considered to be *admissions to the factual basis* of the finding of responsibility for child abuse or neglect entered into the state automated case management system and shall be considered to be *conclusive evidence* of the person's responsibility for child abuse or neglect *to support a motion for summary judgment* submitted to the Office of Administrative Courts:
>
> 1. When a Dependency and Neglect Petition has been adjudicated against or a *deferred adjudication* entered against the Appellant on the basis of Sections 19-3-103 or 19-3-102(1)(a), (b), or (c), C.R.S.[ 2025], arising out of the same factual basis as the founded finding in [Trails];
>
> 2. The Appellant has been found guilty of child abuse, or has pled guilty or nolo contendere to child abuse as part of any plea agreement including, but not limited to, *a deferred judgment agreement,* arising out of the same factual basis as the founded finding in [Trails].

Dep't of Hum. Servs. Rule 7.111(H), 12 Code Colo. Regs. 2509-2 (emphases added).

¶ 12    Erickson responded to the motion by asserting the same arguments she raises on appeal.  Significantly, she did not deny the limited admissions or any other facts supporting the motion; nowhere in her response did she attempt to establish that disputed issues of material fact precluded the entry of summary judgment.

¶ 13    In September 2023, an ALJ at the Office of Administrative Courts made an initial decision to grant the motion.  Erickson filed exceptions to the initial decision with the State Department's Office of Appeals.  A staff adjudicator in the Office of Appeals issued a final agency decision affirming the ALJ's initial decision.

¶ 14    Erickson appealed the final agency decision to the Denver District Court, which affirmed.

E.    Erickson's Appeal to This Court

¶ 15    Erickson characterizes her four contentions in this appeal as follows: (1) the State Board of Human Services (the Board) lacked statutory authority to adopt the Rule, and the Rule contravenes the State Administrative Procedure Act (APA) and C.R.C.P. 56; (2) she was improperly denied the benefits of the deferred adjudication and

6

the deferred judgment; (3) the Rule, as applied in her case, violated her due process rights; and (4) the exhibits supporting the motion were inadmissible.

¶ 16    We first turn to Erickson's challenge to the Board's authority to promulgate the Rule.

## II.    Analysis

### A.    Standard of Review

¶ 17    "We review administrative regulations de novo." *Gomez v. JP Trucking, Inc.*, 2022 CO 21, ¶ 27, 509 P.3d 429, 436. But we are "guided by the same principles that apply to statutory interpretation." *Id.* However, we "presume that agency rules are valid; the person challenging them must prove the invalidity of agency rules beyond a reasonable doubt." *Pub. Serv. Co. of Colo. v. Trigen-Nations Energy Co., L.L.L.P.*, 982 P.2d 316, 325 (Colo. 1999). And "[w]e review an ALJ's legal conclusions on summary judgment de novo." *Baum v. Indus. Claim Appeals Off.*, 2019 COA 94, ¶ 34, 487 P.3d 1079, 1087.

### B.    Erickson's Attacks on the Rule's Validity

¶ 18    We need not address Erickson's contention that the Rule is invalid and, therefore, unenforceable because Erickson did not

attempt to establish that disputed issues of material fact precluded the entry of summary judgment for the State Department. The ALJ was not required to apply the Rule in adjudicating the motion because Erickson failed to challenge the facts underlying the motion. In other words, by not demonstrating the existence of disputed issues of material fact, Erickson could not defeat the motion even if the Board had never adopted the Rule.

¶ 19 Before citing the Rule, the ALJ noted the fundamental summary judgment principle that, if the moving party shows "there is no record evidence supporting the nonmoving party's case," then "the burden shifts to the nonmoving party to establish that there is a triable issue of fact." *See Griswold v. Nat'l Fed'n of Indep. Bus.*, 2019 CO 79, ¶¶ 23-24, 449 P.3d 373, 378-79. The ALJ's accurate recitation of the C.R.C.P. 56 standard suggested that Erickson could defeat the motion by establishing the existence of "a triable issue of fact" regardless of the Rule's reference to "conclusive evidence." *See id.* Although Erickson acknowledges the burden that C.R.C.P. 56 places on the nonmoving party, she did not attempt to show that "a triable issue of fact" precluded the entry of summary judgment for the State Department. *See id.* Specifically,

she did not submit an affidavit or other evidence to dispute the facts that led to her inclusion in Trails. The ALJ did not need to consider whether the State Department's evidence was "conclusive" under the Rule because Erickson did not challenge that evidence.

¶ 20 Thus, we affirm the grant of summary judgment to the State Department based solely on Erickson's failure to contest the State Department's factual allegations. *See Deutsche Bank Tr. Co. Ams. v. Samora*, 2013 COA 81, ¶ 38, 321 P.3d 590, 597 ("An appellate court may affirm the trial court's ruling based on any grounds that are supported by the record.").

## C. Erickson Was Not Entitled to a Hearing Under the APA

¶ 21 We next consider Erickson's contention that the ALJ denied her a hearing in violation of the APA. Erickson seems to argue that she was entitled to a hearing under section 24-4-105(2)(a), C.R.S. 2025, of the APA. That statute entitles parties to a hearing when an "agency adjudicatory hearing is required under the state constitution or by this or any other statute." *Id.* But Erickson does not point to any provision in the Colorado Constitution or a state statute that required a hearing in her case.

9

¶ 22    In any event, to the extent that Erickson argues the ALJ erred by denying her a hearing on the merits of the motion, she had a full and fair opportunity to oppose the motion — and, specifically, to challenge the facts supporting her inclusion in Trails — through her response to the motion.  The ALJ did not bar Erickson from submitting affidavits or other evidence contesting the facts supporting the motion.  Thus, even if Erickson was entitled to oppose the motion at a hearing, the lack of a hearing had no impact on the ALJ's ruling on the motion because Erickson failed to demonstrate that disputed issues of material fact precluded the entry of summary judgment for the State Department.  *See Samora,* ¶ 38, 321 P.3d at 597.

¶ 23    In addition, Erickson's contention that she was entitled to argue her challenge to the Rule at a hearing also fails because section 24-4-105(2)(a) addresses hearings only in the context of "agency adjudicatory proceeding[s]."  § 24-4-105(1).  The APA defines an "[a]djudication" as "the procedure used by an agency for the formulation, amendment, or repeal of an *order.*"  § 24-4-102(2), C.R.S. 2025 (emphasis added).  An order is "the whole or any part of the final disposition (whether affirmative, negative, injunctive, or

10

declaratory in form) by any agency *in any matter other than [rulemaking].*" § 24-4-102(10) (emphasis added).  Thus, Erickson was not entitled to a hearing under section 24-4-105(2)(a) even if the ALJ relied on the Rule to grant the motion.

¶ 24     Moreover, contrary to Erickson's alternative hearing argument, section 24-4-105(14) and (15) and section 26-1-106, C.R.S. 2025, which govern appeals of agency decisions, do not entitle appellants to a hearing.  Rather, under the APA, an ALJ, agency, or hearing officer "*may* permit oral argument," § 24-4-105(14)-(15) (emphasis added), or "*may* conduct hearings on appeals from decisions of county departments," § 26-1-106(1)(a) (emphasis added).  "[M]ay" indicates a "grant of discretion or choice among alternatives," *People v. Garcia*, 2016 COA 124, ¶ 13, 382 P.3d 1258, 1261 (quoting *A.S. v. People*, 2013 CO 63, ¶ 21, 312 P.3d 168, 173-74), unlike "shall," which is "generally mandatory," *id.*  Accordingly, the Rule does not, as Erickson asserts, contravene, "replace[,] or bypass" the APA's "procedures for appealing decisions made by hearing officers."  *Colo. Workers for Innovative & New Sols. v. Gherardini*, 2023 COA 80, ¶ 30, 540 P.3d 950, 957.

¶ 25    For these reasons, we reject Erickson's argument that the ALJ erred by not granting her a hearing.

### D.    The Rule Does Not Violate C.R.C.P. 56

¶ 26    Erickson also contends that the Rule "violates C.R.C.P. 56 and its case law." Erickson specifically argues that the ALJ and the State Department interpreted the Rule to permit the admission of certified copies of the petition and the deferred judgment, even though, according to Erickson, those documents are inadmissible in civil matters "not controlled by the [Rule]."

¶ 27    Erickson's C.R.C.P. 56 argument fails because, as we explained above, *supra* Part II.B, the State Department would have been entitled to summary judgment under C.R.C.P. 56 even if the Rule authorized the ALJ to consider evidence that would be inadmissible under C.R.C.P. 56. This is so because Erickson did not establish that disputed issues of material fact precluded the entry of summary judgment; the limited admissions were admissible under C.R.C.P. 56, *see infra* Part II.G; and the limited admissions documented in the certified copy of the deferred adjudication were sufficient to support the grant of summary

judgment to the State Department. *See* C.R.C.P. 56(c); *Kaminsky v. Kaminsky*, 359 P.2d 675, 678 (Colo. 1961).

¶ 28    Significantly, Erickson's arguments skirt the significance of the limited admissions. In her deferred adjudication, she "voluntarily and knowingly admit[ted]" the limited admissions, and they were sufficient to support Erickson's inclusion in Trails for the four "Environment Injurious" founded allegations identified in the notice letter. As the notice letter explained, a person may be added to Trails if the person is "responsible for [an] incident of . . . neglect." In the deferred adjudication, Erickson admitted liability for neglect because her children's "environment [was] injurious to their welfare." She did not contest that allegation in her response to the motion — or elsewhere.

¶ 29    Thus, it was not improper for the ALJ to grant the motion without an oral argument or hearing, and we reject Erickson's argument that the ALJ improperly granted the motion based on the Rule.

13

### E. The ALJ Did Not Deprive Erickson of the Benefits of the Deferred Adjudication

¶ 30    Erickson next contends that the ALJ's application of the Rule deprived her of the benefits of the deferred adjudication. We disagree.

¶ 31    Because the ALJ did not need to rely on the Rule to grant the motion, as we explained above, *see supra* Part II.B, we consider more generally whether the inclusion of the deferred adjudication as an exhibit to the motion and the ALJ's reference to it denied Erickson the deferred adjudication's benefits.

¶ 32    Recall that, when she entered into the deferred adjudication, Erickson admitted that her children's "environment [was] injurious to their welfare" and that her "family [was] in need of support[]." By entering into the deferred adjudication, Erickson avoided a judicial adjudication that her children were dependent or neglected. "The decision to continue or 'defer' an adjudication has benefits for all parties. . . . The parents receive . . . the opportunity to constructively address the issues that gave rise to the petition without the adverse consequences of a formal adjudication on their record." *People in Interest of T.W.*, 2022 COA 88M, ¶ 18, 519 P.3d

1071, 1076. Erickson received these benefits — she had the opportunity to address the issues that led the County to file the petition, and no formal adjudication was entered against her. Accordingly, the ALJ's grant of summary judgment to the State Department did not deprive Erickson of the benefits of the deferred adjudication.

¶ 33     Further, as the State Department notes, a person entering into a deferred adjudication is "not immunized from all potential consequences." Analogous regulations involving other subject areas require individuals to submit documentation of their prior violations of law. For example, the Colorado Real Estate Commission requires real estate license applicants to submit documentation of, among other things, the disposition of criminal cases previously filed against them, the related police or incident reports, an explanation of the circumstances surrounding the violation, and "any other information" the Commission deems necessary. Div. of Real Estate Rule 3.4(A)(5), 4 Code Colo. Regs. 725-1; *see also* § 12-30-102(4)(g), (8), C.R.S. 2025 (requiring licensed physicians to report "[a]ny final criminal conviction or plea arrangement" to the director of the Colorado Division of Professions and Occupations under the

15

Healthcare Professions Profiling Program, Dep't of Regul. Agencies Rules, 4 Code Colo. Regs. 743-1). These requirements are no different from requiring a person deemed responsible for an incident of neglect be added to Trails.

¶ 34    Thus, Erickson was not deprived of the benefits of her deferred adjudication.

### F.    The Application of the Rule Did Not Violate Erickson's Due Process Rights

¶ 35    Erickson contends that the ALJ's application of the Rule violated her procedural and substantive due process rights because it deprived her of the right to present evidence to challenge her inclusion in Trails.

### 1.    Preservation

¶ 36    The parties disagree whether Erickson preserved this argument. The State Department argues that Erickson "failed to present any analysis or argument" supporting her due process "allegations beyond conclusory statements." But an issue is preserved for appeal in an administrative proceeding if the party raises the substance of the issue before the ALJ. *See City of Durango v. Dunagan*, 939 P.2d 496, 500 (Colo. App. 1997).

16

¶ 37    Erickson raised her due process argument in her response to the motion and her exceptions to the ALJ's initial decision. Both the ALJ and the staff adjudicator in the Office of Appeals acknowledged her due process argument.

¶ 38    The ALJ acknowledged that she lacked the authority to address Erickson's constitutional challenge to the Rule. Therefore, even if Erickson had not preserved her due process argument at the ALJ stage of the case, she could not have raised the argument until she filed her district court appeal. *See Farmer v. Colo. Parks & Wildlife Comm'n*, 2016 COA 120, ¶ 16, 382 P.3d 1263, 1267 ("[W]hen the hearing officer has no authority to address the issue, it can be raised for the first time on appeal."). By raising the due process argument in her district court appeal, Erickson preserved it.

### 2.    Procedural Due Process

¶ 39    Erickson argues that the ALJ's summary disposition of her case, based on the Rule, deprived her of the opportunity to challenge the facts underlying her inclusion in Trails. She argues that the Rule, as applied in her case, violated her procedural due process rights because it "usurp[ed] [her] right to be heard" and she

"ha[d] never in fact been heard on the alleged facts and no alleged facts ha[d] in fact been admitted to or been found to be facts by any court." We disagree.

¶ 40     "The fundamental requisites of due process are notice and the opportunity to be heard." *Franz v. Indus. Claim Appeals Off.*, 250 P.3d 755, 758 (Colo. App. 2010) (quoting *Hendricks v. Indus. Claim Appeals Off.*, 809 P.2d 1076, 1077 (Colo. App. 1990)). "Due process requires 'that the parties be apprised of all the evidence to be submitted and considered, and that they be afforded a reasonable opportunity in which to confront adverse witnesses and to present evidence and argument in support of their position.'" *Delta Cnty. Mem'l Hosp. v. Indus. Claim Appeals Off.*, 2021 COA 84, ¶ 28, 495 P.3d 984, 992 (quoting *Hendricks*, 809 P.2d at 1077). The determination of what constitutes sufficient due process is flexible; no specific procedure is mandated "as long as the basic opportunity for a hearing and judicial review is present." *Id.* (quoting *Ortega v. Indus. Claim Appeals Off.*, 207 P.3d 895, 899 (Colo. App. 2009)).

¶ 41     Erickson's procedural due process argument appears to rest, at least in part, on her contention that she did not admit the facts supporting the petition when she entered into the deferred

18

adjudication.  Accordingly, she argues that she had a right to be heard on the factual basis for her inclusion in Trails and "for the matter to be decided on its merits."

¶ 42    As we explained above, *supra* Part II.B, Erickson had an opportunity to challenge the facts underlying the motion when she responded to it.  She chose not to challenge those facts, however, and, instead, relied solely on procedural arguments.  Further, she had a full and fair opportunity to challenge the findings supporting her inclusion in Trails before she stipulated to the deferred adjudication.  Not only did she not challenge those findings, but she admitted the limited admissions, which alone were sufficient to support her inclusion in Trails.  Notably, she does not argue that, at the time she agreed to the deferred adjudication, she was unaware of her rights, was unaware of the County's allegations against her, or lacked an understanding of the consequences of agreeing to the deferred adjudication.  *See People in Interest of N.G.*, 2012 COA 131, ¶¶ 19, 22, 303 P.3d 1207, 1212-13.  Thus, through the deferred adjudication, Erickson waived her right to a trial or a further hearing on the limited admissions, as well as the other factual allegations in the petition.  *See id.* at ¶¶ 26, 53, 303 P.3d at 1214,

1218 (holding that *during the deferral period* and before the entry of an adjudicatory order, a parent has a right to an adjudicatory hearing and to present new evidence before the deferred adjudication is revoked or expired).

¶ 43     For these reasons, we conclude that Erickson was not denied due process when she entered into the deferred adjudication and thereby waived her right to challenge the limited admissions, which alone supported her inclusion in Trails.

¶ 44     Although Erickson's limited admissions themselves may not have been sufficient to establish her responsibility for the "Physical" incident of abuse identified in the notice letter, she does not develop an argument that she should have had the opportunity to contest this separate finding even though she admitted the factual basis for the four "Environment Injurious" incidents listed in the notice letter.  Thus, we do not further address that issue.  *See People v. Liggett*, 2021 COA 51, ¶ 53, 492 P.3d 356, 365, *aff'd*, 2023 CO 22, 529 P.3d 113 (explaining that appellate courts do not address undeveloped arguments).

### 3. Substantive Due Process

¶ 45 Erickson next contends that the ALJ's application of the Rule violated her substantive due process rights because the Rule is not "narrowly tailored to serve a compelling state interest" and "creates only a mere convenience" for the State Department to "put whatever evidence it wants" before an ALJ, even if that "evidence is not otherwise admissible to prevail on [s]ummary [j]udgment." She goes so far as to suggest that the Rule "shocks the conscience."

¶ 46 But she fails to develop this argument, relying only on conclusory statements and a restatement of the standard of review. Thus, we decline to address such argument. *See Barnett v. Elite Props. of Am., Inc.*, 252 P.3d 14, 19 (Colo. App. 2010). In any event, as we explain below, *infra* Part II.G, Erickson's limited admissions were sufficient to support the grant of summary judgment to the State Department in the absence of a factual dispute, and, for that reason, the ALJ was not required to rely on the Rule to grant the motion.

## G.     Erickson's Limited Admissions
## Were Admissible

¶ 47     Erickson's final contention is that the ALJ erred by considering evidence that was inadmissible under C.R.C.P. 56. Specifically, Erickson challenges the admissibility of (1) the notice letter; (2) the certified court records, including the complaint and the related police incident report in her criminal case; (3) the deferred judgment; and (4) the deferred adjudication.  Erickson contends that this evidence was inadmissible because it did not take the form of affidavits and that the notice letter was inadmissible hearsay.

¶ 48     While we review de novo an order granting a summary judgment motion, *Baum,* ¶ 34, 487 P.3d at 1087, "[w]e review evidentiary rulings in summary judgment proceedings for abuse of discretion," *Andersen v. Lindenbaum,* 131 P.3d 1154, 1157 (Colo. App. 2005), *rev'd on other grounds,* 160 P.3d 237 (Colo. 2007).  "A lower court abuses its discretion when it misapplies the law or when its ruling is manifestly arbitrary, unreasonable, or unfair." *Terra Mgmt. Grp., LLC v. Keaten*, 2025 CO 40, ¶ 28, 572 P.3d 126, 133.

¶ 49     "If the reviewing court finds no error, it must affirm the agency action." *Romero*, ¶ 25, 417 P.3d at 920.  Under this standard, we "presume the validity and regularity of the administrative proceedings and resolve all reasonable doubts as to the correctness of the administrative ruling in favor of the agency." *Id.*

¶ 50     Because Erickson did not challenge any of the facts supporting the motion, the ALJ could consider Erickson's deferred adjudication as "conclusive evidence" of her responsibility for child abuse and neglect.  *See supra* Part II.B.  Critically, Erickson does not provide support for her suggestion that the limited admissions vanished into thin air when she satisfied the terms of the deferred adjudication and the dependency and neglect proceeding closed.

¶ 51     Moreover, contrary to Erickson's narrow reading of the references to "affidavit" in C.R.C.P. 56, that rule does not require that every exhibit supporting a summary judgment motion take the form of an affidavit.  The court may consider "pleadings, depositions, answers to interrogatories, and *admissions on file.*" C.R.C.P. 56(c) (emphasis added).  Erickson does not explain why the ALJ could not consider Erickson's limited admissions under

CRE 801(d)(2), which provides that a party-opponent's admissions are admissible evidence.

¶ 52    Because, by entering into the deferred adjudication, Erickson admitted facts regarding the children's injurious environment — facts that she did not contest in her response to the motion — there was no genuine dispute of material fact and the ALJ properly granted summary judgment to the State Department.  Those facts also supported her addition to Trails.  *See* Dep't of Hum. Servs. Rule 7.111(H)(1), 12 Code Colo. Regs. 2509-2 (providing that a deferred adjudication arising out of the same factual basis as the "founded finding" in Trails "shall be considered to be [an] admission[] to the factual basis of the finding of responsibility for child abuse or neglect" in Trails).

¶ 53    Furthermore, even if, as Erickson argues, the ALJ could only consider "affidavits," the certified copy of the deferred adjudication attached to the motion was the legal equivalent of an affidavit. "[C]ertified court records in and of themselves constitute a sufficient *affidavit* in support of a motion for summary judgment under [C.R.C.P. 56]." *Kaminsky*, 359 P.2d at 678 (emphasis added).

¶ 54   Erickson argues that, even though the State Department provided the ALJ with a certified copy of the deferred adjudication, that document was nonetheless inadmissible under a federal case cited in *Kaminsky — Farm Bureau Mutual Insurance Co. v. Hammer*, 83 F. Supp. 383 (W.D. Va.), *rev'd on other grounds*, 177 F.2d 793 (4th Cir. 1949).  In that case, the federal district court said that certified court records are admissible as affidavits only if a clerk made a sworn statement "as to what the court records are" and did not purport to swear to "the truth of the facts" set out in the records.  *Id.* at 386.  But the *Kaminsky* court did not cite *Hammer* for this proposition, and Erickson does not point to any Colorado case adopting *Hammer*'s reasoning.  Moreover, Erickson does not argue that the State Department's certification contained a third party's statement regarding "the truth of the facts" in the deferred adjudication.  Nor does she challenge the completeness or accuracy of the copy of the deferred adjudication submitted in support of the motion.

¶ 55   Accordingly, we hold that Erickson's limited admissions in the deferred adjudication were admissible and sufficient to support the motion, and the ALJ did not abuse her discretion by considering

25

them. For this reason, we need not consider whether the ALJ erred by reviewing the notice letter, the complaint, the police incident report, or the deferred judgment.

¶ 56 Finally, Erickson contends that, in the motion, the State Department misrepresented her responses to the notice of issues. But in her response to the motion, Erickson did not argue that the State Department misrepresented her responses, and she failed to submit an affidavit contesting any fact in the notice of issues.

¶ 57 As the district court observed in affirming the ALJ's and the staff adjudicator's decisions, "Erickson made no effort to dispute [her] factual admissions in her response to the motion . . . aside from general denials unsupported by evidence." The court added, "In light of the strong evidence provided by the [State] Department (almost entirely consisting of Erickson's own admissions) and the lack of any evidence provided by Erickson to dispute the [State] Department's evidence, the Court holds that the ALJ's decision was supported by competent evidence on the record." *See Sandstrom v. Solen,* 2016 COA 29, ¶ 33 n.8, 370 P.3d 669, 675 n.8 (explaining that entry of summary judgment was appropriate because the opposing party "provided no affidavits or other evidence in . . .

response to the . . . motions for summary judgment"). We agree with the district court.

¶ 58    In administrative proceedings, the ALJ is the finder of fact, *see Colo. Ethics Watch v. City & County of Broomfield*, 203 P.3d 623, 626 (Colo. App. 2009), and has authority to determine whether there are any genuine issues of material fact, *see Coffman v. Colo. Common Cause*, 102 P.3d 999, 1003 (Colo 2004). The ALJ's findings were aligned with the limited admissions established through the deferred adjudication. And when the limited admissions are coupled with Erickson's failure to demonstrate the existence of a factual dispute, we conclude that the State Department did not misrepresent any of Erickson's statements.

¶ 59    Thus, we hold that the ALJ did not err by granting summary judgment to the State Department and that the staff adjudicator and district court did not err by affirming the ALJ's initial decision.

### III.    Disposition

¶ 60    The judgment is affirmed.

JUDGE YUN and JUDGE SCHUTZ concur.